**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| RAVENSBURGER INTERACTIVE | * | |
| MEDIA GmbH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-06-0950 |
| | * | |
| BETHESDA SOFTWORKS LLC, | * | |
| | * | |
| Defendant | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**MEMORANDUM OPINION**</u>

On April 13, 2006, Ravensburger Interactive Media GmbH ("Ravensburger" or "Plaintiff")

filed this action against Bethesda Softworks LLC ("Bethesda" or "Defendant") alleging tortious

interference with contractual relations, unjust enrichment, and requesting an imposition of a

constructive trust. Currently pending before the Court is Defendant's Motion to Dismiss [7].

Defendant posits that Ravensburger's claims should be dismissed for failure to state a claim for

which relief may be granted and for failure to join an indispensable party. *See* FED. R. CIV. P.

12(b)(6), 12(b)(7), and 19. The motion has been fully briefed and the Court has reviewed the entire

record. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons set

forth more fully below, the Court will DENY Defendant's Motion to Dismiss.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

Ravensburger is a German limited liability company involved principally in the development

and distribution of puzzles, board games, and books. Bethesda is an American company formed

under the laws of Delaware, with its principal place of business in Maryland. Bethesda is a

developer and publisher of video games for hardware platforms, such as the Microsoft Xbox

("Xbox"), the Sony PlayStation ("PlayStation"), and the personal computer ("PC").  Headfirst Productions Ltd. ("Headfirst"), a British company with its principal place of business in the United Kingdom and a nonparty to this action, is also a video game developer.

On September 29 and October 4, 2000, Ravensburger and Headfirst executed an agreement ("Ravensburger–Headfirst Agreement") concerning the development of a video game entitled "Call of Cthulhu–Dark Corners of the Earth"(the "Game") on several different hardware platforms.  Under the Ravensburger–Headfirst Agreement, Ravensburger agreed to finance the development of the Game through advance payments to Headfirst in the aggregate amount of approximately EUR 1,768,000.  In return, Headfirst granted Ravensburger an exclusive license to manufacture, use, distribute, sell and otherwise exploit the Game worldwide.  However, on April 29, 2003, Headfirst also entered into an agreement with Bethesda ("Bethesda–Headfirst Agreement") under which Bethesda agreed to pay guaranteed amounts to Headfirst for the Xbox and PC versions of the game, along with royalty payments, and Headfirst agreed to grant Bethesda an exclusive license to market and distribute the Game worldwide.

The inconsistent terms of the two agreements made Bethesda uneasy about its rights to the Game.  Bethesda insisted that Headfirst settle the matter with Ravensburger so that Bethesda's exclusive rights to the Game would be clear.  Therefore, Headfirst and Ravensburger entered into a settlement agreement dated December 17, 2003 and amended on February 21, 2005 (collectively, the "Settlement Agreement").  Under the Settlement Agreement, Ravensburger agreed to release its rights in the Game and to waive any claims for additional payments over the settlement amount of EUR 800,000, provided that all monies to be paid by Bethesda to Headfirst under the Bethesda–Headfirst Agreement were paid solely into a private escrow account until Ravensburger

2

had received the full EUR 800,000.  Headfirst, in turn, agreed that it would instruct Bethesda to make payments according to the terms of the Settlement Agreement, that Headfirst would refrain from modifying the Bethesda–Headfirst Agreement, and that Headfirst would refrain from taking any other action that could impair Ravensburger's receipt of payment from the escrow account.

In 2004, Headfirst began experiencing serious financial difficulties, which hindered its ability to complete development of the Game.  In an effort to protect its investment in the Game, Bethesda forwarded to Headfirst a series of payments to cover the actual development costs of finishing the Game.  Furthermore, in violation of the Settlement Agreement, Headfirst and Bethesda executed a series of amendments to the Bethesda–Headfirst Agreement in order to document the nature and amount of these payments.  The advances were documented not as payments becoming due and payable by Bethesda to Headfirst, but as recoupable development costs that Bethesda lent to Headfirst in order to protect Bethesda's interest and investment in the Game.  In total, Bethesda paid nearly $1.2 million directly to Headfirst instead of depositing the funds into an escrow account as provided by the Settlement Agreement.

In October 2005, Bethesda shipped the Xbox version of the Game to stores in North America and Europe, and the PC version was released in late March 2006.  The amounts payable to Headfirst under the Bethesda–Headfirst Agreement should have become due in January 2006.  However, Bethesda has refused to pay any funds into the escrow account.  Consequently, Ravensburger filed this action on April 13, 2006, claiming tortious interference with the Settlement Agreement and unjust enrichment, and seeking the imposition of a constructive trust.  At the present time, Headfirst is involved in insolvency proceedings in the United Kingdom, and apparently cannot be joined to this action without the consent of the Administrator in those proceedings.  On May 22, 2006,

Bethesda filed the instant motion to dismiss for failure to state a claim upon which relief can be granted and for failure to join an indispensable party.

## STANDARD OF REVIEW

A court must deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (citing *Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)"). Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Therefore, a complaint may be dismissed as a matter of law only if it lacks a cognizable legal theory *or* if it alleges insufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal

4

Practice ¶ 12.08 at 2271 (2d ed. 1982)).

Defendant also asserts Rules 19 and 12(b)(7) as grounds for dismissing Plaintiff's Complaint. Under Rule 19, a court must dismiss an action if it cannot obtain jurisdiction over an indispensable party. FED. R. CIV. P. 19(b).[1] Rule 19 draws a distinction between a "necessary party" and an "indispensable" party. *Compare* FED. R. CIV. P. 19(a)[2] *with* FED. R. CIV. P. 19(b); *see also Schlumberger Indus., Inc. v. National Sur. Corp.*, 36 F.3d 1274, 1285 (4th Cir. 1994). While a court may deem a necessary person indispensable, not all necessary persons are indispensable. *See* FED.

---

[1] Rule 19 provides, in relevant part:

> If a [necessary party] cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED. R. CIV. P. 19(b).

[2] Rule 19(a) defines a necessary party as follows:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

FED. R. CIV. P. 19(a).

R. CIV. P. 19(b); *Schlumberger*, 36 F.3d at 1285-86.  Thus, the Fourth Circuit has clarified that "[i]n determining whether a party is necessary and, then, indispensable, the court must consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar." *Id.* at 1286 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102 (1968)); *Nat'l Union Fire Ins. Co. v. Rite-Aid*, 210 F.3d 246, 250-51 (4th Cir. 2000) (affirming the dismissal of an action under Rule 19 after determining that a party was indispensable because it had an interest in the subject matter of the action).

## ANALYSIS

I.  Defendant's Rule 12(b)(6) Motion

*A.  Tortious Interference Claim*

In order to establish a case of tortious interference with contract, Maryland law requires the showing of: (1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge of that agreement; (3) the defendant's intentional interference with that agreement; (4) a breach of the contract by the third party; and (5) resulting damages to plaintiff.  *See Macklin v. Robert Logan Assoc.*, 334 639 A.2d 112, 117-19 (Md. 1994).

The parties do not dispute the existence of a contract between Ravensburger and Headfirst. In fact, in paragraphs 9 and 10 of the Complaint, Ravensburger pleads facts tending to show the existence of such a contract.  Ravensburger has also sufficiently alleged Bethesda's knowledge of the Settlement Agreement.[3]  Although Bethesda disputes whether there has been a breach of the Settlement Agreement and resulting damages to Ravensburger, it is clear from Ravensburger's plain

---

[3]  In its Complaint, Ravensburger alleges that "Bethesda also took an active interest in the precise terms of the Settlement Agreement and other documents beforehand, and it approved the Settlement Agreement before it was signed."  Compl. ¶ 16.

statement of the facts that a breach and damages have been sufficiently alleged in the Complaint. *See* Compl. ¶¶ 13-20.  Consequently, the crux of Bethesda's argument for dismissal under Rule 12(b)(6) appears to be the third element—intentional interference.

A showing of intentional interference requires "both a tortious intent and improper or wrongful conduct." *Macklin*, 639 A.2d at 119.  Where the conduct in question is neither wrong nor improper, such conduct will not support a tortious interference claim. *Id.*; *see also Sharrow v. State Farm Mutual Automobile Ins. Co.*, 511 A.2d 494, 498 (Md. 1986).  Bethesda argues that it did not interfere with the Settlement Agreement, and, to the extent there was any interference, the interference was not wrongful or improper.  Bethesda grounds its argument in the fact that the Bethesda–Headfirst Agreement predated the Settlement Agreement, and as such, Bethesda was authorized and obligated to act in accordance with the terms of the Bethesda–Headfirst Agreement. In particular, Bethesda argues that Section 27 of the Bethesda–Headfirst Agreement gave Bethesda the right to finance the development of the Game, and thus to avoid paying the amounts due and payable to Headfirst into escrow.  While there may be some merit to Bethesda's argument, the argument is not proper for consideration by this Court on a 12(b)(6) motion.  In determining whether to dismiss a case for failure to state a claim, the Court confines its inquiry to the four corners of the well-pleaded Complaint.  Rule 12(b)(6) is designed to test the legal sufficiency of the Complaint.

Here, Ravensburger has indeed come forth with detailed factual allegations relating to Bethesda's conduct and intent.  Paragraph 19 of the Complaint best demonstrates Ravensburger's allegations:

> Bethesda *deliberately* paid monies to Headfirst outside the terms of the escrow arrangement, despite its awareness and acceptance of the terms of the Settlement Agreement between Headfirst and Ravensburger.  Bethesda thus was complicit in an *improper* effort to divert funds, so that Headfirst and its managers could avoid their

legal obligations to Ravensburger.  Not only did Bethesda's and Headfirst's improper diversion of funds violate the Settlement Agreement in a number of respects – including the payment terms and the prohibition against modifications to the Bethesda Publishing Agreement – but it also caused Headfirst's managers to take actions contrary to their statements made under oath in their Statutory Declaration. Bethesda's contribution to this *wrongful* course of conduct was substantial – indeed indispensable – in that, as the payor of the $1.2 million to Headfirst, it alone could determine where those funds would be directed.    Bethesda's actions were *intentionally* designed to harm Ravensburger by depriving it of payments to which it was contractually entitled under the Settlement Agreement.

Compl. ¶ 19 (emphasis added).  Taken the facts in the light most favorable to Plaintiff, as this Court must on a Rule 12(b)(6) motion, the Court concludes that Ravensburger has stated a claim for tortious interference.  As such, Bethesda's motion to dismiss the tortious interference claim must be denied.

## B.  Unjust Enrichment Claim

In order to state a claim for unjust enrichment, Ravensburger has to prove: (1) that it conferred a benefit on Bethesda; (2) an appreciation or knowledge by Bethesda of that benefit; and (3) Bethesda's acceptance or retention of the benefit under circumstances that make it inequitable for Bethesda to withhold payment of its value.  *See Seafarers Welfare Plan v. Philip Morris*, 27 F. Supp. 2d 623, 635 (D. Md. 1998) (citing *Richard F. Kline, Inc. v. Signet Bank/Maryland*, 651 A.2d 442 (Md. Ct. Spec. App. 1995)).  In its Complaint, Ravensburger has alleged: (1) the settlement between Ravensburger and Headfirst conferred a benefit on Bethesda by Ravensburger waiving its pre-existing rights to the Game and thereby removing uncertainty, cost, and delay of potential litigation over the parties' rights under their respective publishing agreements with Headfirst; (2) Bethesda recognized this benefit in its October 2003 correspondence; and (3) Bethesda's collusion with Headfirst to avoid paying the amounts due and payable to Ravensburger into the escrow account makes it inequitable for Bethesda to retain the benefit of Ravensburger's settlement with

Headfirst.  Compl. ¶¶ 15, 21-25.

In its motion to dismiss the unjust enrichment claim, Bethesda asserts that it can only be described, at best, as an incidental beneficiary of the Settlement Agreement.  Bethesda then cites the *Kline* case for the proposition that "a third party is not unjustly enriched when it receives a benefit from a contract between two other parties where the party benefited has not requested the benefit or misled the other parties."  *Kline*, 651 A.2d at 445.  However, Ravensburger claims, and Bethesda apparently accepts for the purpose of this motion, that once Bethesda learned of the existence of the Ravensburger–Headfirst Agreement, Bethesda insisted that Headfirst confirm with Ravensburger the termination of their earlier deal in order to avoid any issues as to Bethesda's rights to the Game.  Compl. ¶ 9.  Therefore, Bethesda cannot argue that it is simply the ordinary incidental third-party beneficiary.  To the contrary, Bethesda actively participated in facilitating the consummation of the Settlement Agreement, which bestowed upon Bethesda a substantial benefit in avoiding the cost of delay, lost profits, and even the risk of litigation.  Ravensburger has further alleged that Bethesda has refused to pay any amount into escrow.  Since the face of the Complaint adequately presents facts to establish a case for unjust enrichment, Bethesda's motion to dismiss the unjust enrichment claim must also be denied.

*C.  Constructive Trust*

In its final claim, Ravensburger seeks the imposition of a constructive trust over all proceeds related to the Game until it has obtained the EUR 800,000.  The imposition of a constructive trust is an equitable remedy and is "employed by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property."  *Wimmer v. Wimmer*, 414 A.2d 1254, 1258 (Md. 1980).  "The purpose of the

remedy is to prevent the unjust enrichment of the holder of the property." *Starleper v. Hamilton*, 666 A.2d 867, 869 (Md. Ct. Spec. App. 1995).  Because the Court has denied Bethesda's motion to dismiss Ravensburger's unjust enrichment claim, it would be a *non sequitur* to now grant the dismissal of the constructive trust.  There is no reason at such an early stage in this litigation to foreclose the possibility of imposing a constructive trust on the Game's proceeds in order to protect Ravensburger's interests.  As such, the Court will also deny Bethesda's motion to dismiss the imposition of a constructive trust.

II.  Defendant's Rule 12(b)(7) Motion

Bethesda also cites Rule 12(b)(7) as grounds for dismissing Ravensburger's Complaint, arguing that Ravensburger's failure to join Headfirst is fatal to the maintaining of this action.  In determining whether, pursuant to Rule 12(b)(7), an action should be dismissed for failure to join an indispensable party, the Court engages in a two-step inquiry: "first, whether a party is necessary to a proceeding because of its relationship to the matter under consideration; and second, if a necessary party is unavailable, whether the proceeding can continue in that party's absence.  If it cannot, the party is indispensable and the action should be dismissed." *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917 (4th Cir. 1999).  "Dismissal of a case is a drastic remedy, however, which should be employed only sparingly." *Id.* at 918.

The first question is whether Headfirst is a necessary party to this action.  Bethesda argues that Headfirst is a necessary party to this action because the action is "so entangled with" the contractual relationship between Ravensburger and Headfirst that the Court "would necessarily be required to adjudicate the breach of contract claim while deciding the tort claim." *Ente Nazionale Iddrocarburi v. Prudential Secs. Group, Inc.*, 744 F. Supp. 450 (S.D.N.Y. 1990).  Although the facts

of the case depict an intricate triangular relationship between Ravensburger, Bethesda, and Headfirst, Rule 19(a) sets out the standard for determining whether a person is necessary. One way a person can be deemed necessary to an action is if in the person's absence complete relief cannot be accorded among those already parties. FED. R. CIV. P. 19(a)(1). Here, complete relief as between Ravensburger and Bethesda can be allocated even in the absence of Headfirst. Ravensburger's claims are directed at Bethesda's alleged tortious and inequitable conduct in structuring its payments so as to frustrate Ravensburger's rights under the Settlement Agreement. Ravensburger has every right to pursue this tort action against Bethesda. Even if Bethesda has any claims for indemnification or contribution against Headfirst, those claims do not prevent the Court from according complete relief in this action without Headfirst's presence.

The second way to be deemed a necessary party is if Headfirst claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in its absence may impair or impede its ability to protect that interest. FED. R. CIV. P. 19(a)(2)(i). There can be no doubt here that Headfirst, at the very least, has an interest in the subject matter of this action. In order to prove tortious interference, Ravensburger will have to show that Headfirst did in fact breach the Settlement Agreement as a result of Bethesda's intentional interference.

In *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Rite Aid of South Carolina*, 210 F.3d 246 (4th Cir. 2000), Rite Aid Corporation ("Rite Aid") negotiated with National Union to obtain commercial general liability coverage for itself and its subsidiaries, including the defendant in that case, Rite Aid of South Carolina ("RASC"). National Union brought a declaratory judgment action against RASC seeking a declaration that the policy issued to Rite Aid did not obligate National Union to provide coverage to RASC. The district court dismissed the action finding that

Rite Aid was a necessary and indispensable party whose joinder would destroy diversity.  On appeal, the United States Court of Appeals for the Fourth Circuit affirmed that nonparty Rite Aid was a necessary party because Rite Aid was a contracting party and permitting the suit to proceed without Rite Aid would impair Rite Aid's ability to protect a claimed interest relating to the action.  *National Union*, 210 F.3d at 251.

Here, Ravensburger did not enter into any contract with Bethesda.  Instead, Ravensburger contracted with Headfirst and is now seeking relief against Bethesda that is inextricably related to an alleged breach of that contract.  Because Headfirst is alleged to have been a vital and active player in Bethesda's tortious conduct, allowing the case to proceed without Headfirst will certainly impede Headfirst's ability to represent its interests in this action.  As such, Headfirst is a necessary party to this action.

The final way a person could be considered a necessary party under Rule 19 is if any of the persons already joined as parties would be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations if the absent person is not joined.  FED. R. CIV. P. 19(a)(2)(ii). Bethesda argues that, by not joining Headfirst in this action, Bethesda may find itself being hauled into legal proceedings in Germany and the United Kingdom.  Other than this speculative assertion, Bethesda has not persuaded the Court that Bethesda or Ravensburger are subject to a *substantial* risk of multiple or inconsistent obligations as a result of the nonjoinder of Headfirst.

Having already found that Headfirst is a necessary party in this action, the Court now turns to the second prong of the Rule 19 inquiry, whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."   FED. R. CIV. P. 19(b).  Rule 19(b) provides four factors to guide the

Court's discretion in making the indispensability determination.  The first factor is to what extent a judgment in the person's absence would prejudice the absent person or those already joined as parties.  The analysis of this factor overlaps somewhat with the 19(a) analysis.  As stated above, the Court does not believe that a judgment in Headfirst's absence will prejudice either Ravensburger or Bethesda.    A more difficult question is whether a judgment in Headfirst's absence will prejudice Headfirst.  As stated above, Headfirst is deemed a necessary party because its interests will not be adequately protected in its absence.  However, whether an interest is protected or not and whether the inability to protect that interest is unduly prejudicial are two distinct questions.  The Court, having addressed the former in its 19(a) analysis, addresses the latter under Rule 19(b).  The biggest threat posed by Headfirst's absence in this action is the possibility that this Court will find that Headfirst breached its contract with Ravensburger.  Such a finding, though, does not translate into prejudice to Headfirst.  If Headfirst is not joined as a party to this suit, then the doctrines of res judicata and collateral estoppel will not operate to establish the breach in potential future litigation. Further, it is not entirely clear whether this Court's factual findings will even be admissible in German or English fora, as Bethesda fears.  Consequently, this factor weighs against dismissal of the action.

The second factor is to what extent, by shaping the relief, can any prejudice be avoided or lessened.  The Supreme Court has instructed that "[w]hen an action will affect the interests of a party not before the court the ultimate question is this:  Were the case to proceed, could a decree be crafted in a way that protects the interests of the missing party and that still provides adequate relief to a successful litigant?"  *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968).  In the *National Union* case, the Fourth Circuit reasoned that in order to reach a judgment

on the merits of that case, the district court could not have avoided addressing the terms of the agreement between Rite Aid and National Union. However, that same issue was simultaneously being litigated in state court. As a result, the court held that there was no way to tailor relief so as to avoid or lessen prejudice to the parties. *National Union*, 210 F.3d at 253. Like the district court in *National Union*, this Court must address the terms of the Settlement Agreement in order to reach the merits of Ravensburger's claims against Bethesda. The instant case is distinguishable, however, because there are no pending suits in other fora. If this Court finds that Bethesda's conduct improperly interfered with Ravensburger's contractual relations with Headfirst, then this Court could very well craft a relief that avoids any prejudice to the parties or to Headfirst.

The third factor asks whether a judgment without the absent party will be adequate. This factor "implicates 'the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.'" *Id.* (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968)). The Court has already concluded *supra* that complete relief can be accorded even without the presence of Headfirst. Therefore, this factor weighs against dismissing the action.

Finally, Rule 19 instructs the court to decide whether dismissal for nonjoinder will leave the plaintiff with an adequate remedy. Bethesda claims that Ravensburger's real fight is with Headfirst for breach of contract, and thus should stake its claim in the insolvency proceedings in the United Kingdom, or bring an action for breach of contract in the civil courts in Germany. The parties apparently agree that Headfirst is financially handicapped and has initiated insolvency proceedings in England. If this is true, then Ravensburger is unlikely to be able to recover adequate relief from Headfirst. Further, Ravensburger's action is not simply a breach of contract action as Bethesda

14

posits.  Rather, Ravensburger has brought this action against Bethesda because of Bethesda's own conduct in encouraging or inducing Headfirst's breach.  If this Court dismisses this action for nonjoinder, then it may not only allow Bethesda's alleged tortious conduct to go unremedied, but it may also shut the only viable door to Ravensburger's recovery.  On these facts, this Court cannot in equity and good conscience arrest Ravensburger's ability to have its day in court.  Accordingly, Defendant's motion to dismiss for failure to join an indispensable party must be denied.

## **CONCLUSION**

For the reasons stated above, the Court will deny Defendant's Motion to Dismiss.  An Order consistent with this opinion will follow.

 

 

 

___October 6, 2006_____         _____/s/_____
       Date                                           Alexander Williams, Jr.
                                                   United States District Judge